IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ADRIAN HAROLD,[1] | § | |
| | § | No. 524, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below – Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| DOUG HAROLD, | § | File No. CN91-10074 |
| | § | Petition No. 17-06166 |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: September 18, 2019
Decided: September 26, 2019

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 26th day of September, 2019, having considered the briefs and the record below, it appears to the Court that:

(1)     Adrian ("Wife") and Doug ("Husband") Harold married on January 5, 1991, separated on June 9, 2016, and divorced on November 15, 2017.  Husband remarried on May 20, 2018.  The Family Court retained jurisdiction over ancillary matters to divorce and held a final hearing on the merits on June 18, 2018.  Both

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

parties testified on their own behalf and called no other witnesses. Counsel represented Husband while Wife proceeded *pro se*.

(2)     At the time of divorce, Husband was fifty years old and in good health. Since 1991, he has worked as a claims adjuster for an insurance company and has a 401k and pension. He stipulated that his salary is $70,500 while testifying that his bi-weekly paystubs equal $2,738.62.[2] Wife was forty-nine years old. She worked for the State primarily as a tax auditor from 1991 until January 2006 when she left to start her own businesses as a realtor, life insurance agent, financial advisor, and tax preparer. While her businesses suffered a loss for many years, her 2017 tax returns show income of $23,379.

(3)     The parties have three adult children. Two reside with Wife, where one works and another attends college. The parties own a marital residence with an outstanding mortgage of about $184,000. They agreed to Husband retaining two cars, Wife retaining one, equally dividing Husband's 401k, and dividing personal items.

(4)     During the hearing, Husband wanted the marital residence sold and the proceeds divided equally while Wife sought to stay in the residence. Husband argued that Wife was underemployed and testified about her prior salary with the

---

[2] Annualized salary of $71,204.12. Opening Br. at 31.

State. Husband also sought to include his credit card debts as marital debts. Wife sought alimony, court costs, and attorneys' fees.

(5) After the hearing, the Family Court decided to sell the marital residence and to divide the proceeds equally, divided some of the Husband's credit card debts because they were marital debts, denied Wife alimony because she was not dependent, and did not address Wife's request for court costs and attorneys' fees.

(6) On appeal, Wife argues that the Family Court erred because it split the marital property equally based on an erroneous understanding that Wife agreed to an equal division, denied Wife alimony based on a miscalculation of the parties' incomes and estimated expenses, failed to address Husband's pension when dividing the marital property, treated Husband's credit card debts as marital debts, and failed to address Wife's request for costs and attorneys' fees.

(7) On appeal from a Family Court decision, this Court reviews the facts and law in addition to the Trial Judge's inferences and deductions.[3] We will not disturb factual findings "unless they are clearly wrong and justice requires their overturn."[4] Nor will we substitute our own opinion "for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[5]

---

[3] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[4] *Id.*
[5] *Id.*

3

"Conclusions of law are reviewed *de novo*."[6] "If the law was correctly applied, we review for an abuse of discretion."[7]

(8)     Wife first argues that because the Family Court mistakenly found that she agreed to divide all property equally, the Family Court failed to perform a full analysis of the factors under 13 *Del. C.* § 1513. The statute allows the Family Court to "equitably divide . . . the marital property between the parties . . . in such proportions as the Court deems just after considering all relevant factors."[8] The Family Court has "broad discretion to divide marital property in an equitable manner."[9]

(9)     The court stated in the Order that "[i]n their Ancillary Pretrial Stipulation, the parties agreed to a 50/50 percentage distribution, and during trial, Wife offered no opposition to Husband's position."[10] In the Stipulation, the parties

---

[6] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008) (citations omitted).
[7] *Id.*
[8] 15 *Del. C.* § 1513(a). The statutory factors are: "(1) The length of the marriage; (2) Any prior marriage of the party; (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (4) Whether the property award is in lieu of or in addition to alimony; (5) The opportunity of each for future acquisitions of capital assets and income; (6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife; (7) The value of the property set apart to each party; (8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live; (9) Whether the property was acquired by gift, except those gifts excluded by paragraph (b)(1) of this section; (10) The debts of the parties; and (11) Tax consequences." *Id.*
[9] *Glanden v. Quirk*, 128 A.3d 994, 1001 (Del. 2015).
[10] [*Harold*] *v.* [*Harold*], No. CN91-10074, Pet. 17-06166, Order, at 3 (Del. Fam. Sept. 11, 2018) (hereinafter "Order").

4

agreed to divide the three cars, equally divide the 401k, keep their own bank accounts, and divide personal items.[11] They disagreed, however, on what to do with the marital residence, Husband's pension, and Husband's credit card debts.[12] At the hearing, Husband advocated for a 50/50 division in his opening statement.[13] While Wife did not interrupt the opening statement, both parties maintained their separate positions regarding the marital residence and credit card debts.[14] Thus, the court mistakenly held that Wife agreed to an equal split of the marital property.

(10) Next, Wife argues that the Family Court miscalculated her income when determining alimony. We will not disturb the Family Court's alimony ruling if: "(1) its findings of fact are supported by the record; (2) its decision reflects due consideration of the statutory factors found in section 1512; and (3) its explanations, deductions and inferences are the product of a logical and deductive reasoning process."[15]

(11) Wife contends that her salary should be $23,379 based on her 2017 tax returns. Wife left her job with the State in January 2006 to start her own business.[16]

---

[11] App. to Opening Br. at A104-05.
[12] *Id.* at A105.
[13] *Id.* at A012.
[14] *Compare id.* at A012 ("[Husband] wishes – the marital home . . . to be sold . . . [and] there are four debts that he wishes to be split equally"), *with id.* at A058-59 ("I don't want to pay his [debts] . . . [and] I don't feel that my children and I should have to move from our home"), *and id.* at A090 ("I just want to stay in my home").
[15] *Glanden*, 128 A.3d at 1002 (quoting *Thomas v. Thomas*, 102 A.3d 1138, 1142 (Del. 2014) (quoting *Gray v. Gray*, 503 A.2d 198, 201 (Del. 1986))).
[16] App. to Opening Br. at A022, A094-95.

Husband introduced evidence of Wife's anticipated 2006 salary of $43,714.07,[17] in support of his argument that Wife was underemployed.[18] The Family Court determined that Wife was underemployed and attributed Wife with an annual income of $54,250—the annual wage of 25% of accountants in Delaware[19]—"due to Wife's accounting degree, and [because] it closely resembles what Wife would have earned had she stayed employed or returned full-time to work in accounting."[20]

(12) The Family Court may attribute income to an underemployed party.[21] But, the finding must have a basis in the record. The only evidence of underemployment was the evidence introduced by Husband of her anticipated 2006 salary of $43,714.07 and his testimony about Wife's work ethic.[22] Instead of relying on the evidence of record, however, the court decided that Wife could return to work as an accountant.[23] The court then attributed income to Wife of $54,250 based on government data that neither party relied upon or introduced, which was improper.[24] Because the attributed income was not supported by the record, the Family Court erred when it attributed an income of $54,250 to Wife.

---

[17] *Id.* at A021-22.
[18] *Id.* at A035, A093-95.
[19] Order, at 5 (citing Bureau of Labor Statistics Occupation Employment and Wages Estimates for Accountants and Auditors).
[20] *Id.* at 13.
[21] *Greene-Franklin v. Franklin*, 105 A.3d 989, 2014 WL 7010016, at *1 (Del. Nov. 21, 2014) (citing *Sentner v. Sentner*, 799 A.2d 1154, 1159 (Del. 2002)) (TABLE).
[22] App. to Opening Br. at A021-22, A035, A093-95.
[23] Order, at 13.
[24] *Id.* at 5, 13.

(13) Wife also argues that the Family Court erred when it attributed income of $70,500 to Husband when determining alimony. In the Ancillary Pretrial Stipulation, the parties stipulated that Husband's salary was $70,500.[25] During the hearing, Husband testified about his recent pay stub for $2,738.62, [26] which represents a $71,204.12 annual salary.[27] Wife points to the parties' 2016 joint tax returns, which show that Husband earned $81,178, but Husband testified that the excess was the result of overtime, and "[o]vertime is finished."[28] The Family Court did not err because it could conclude based on the record that Husband would have no more overtime and that the stipulated salary was appropriate.

(14) As far as expenses, Wife argues that the Family Court erroneously lowered her expenses while refusing to lower Husband's expenses. We find that the Family Court erred when it calculated Wife's estimated expenses because the Order contains undisputed errors.[29]

(15) Wife also argues that Husband's estimated expenses should be similarly reduced. The Family Court reduced seven of Wife's expenses by half

---

[25] App. to Opening Br. at A105.
[26] *Id.* at A017.
[27] Opening Br. at 31.
[28] App. to Opening Br. at A036.
[29] For example, line item four is incorrectly reduced because half of $350 is $175, not $117; Wife submitted estimated expenses that differ from the amounts listed in the adjustment; and the erroneously adjusted numbers are incorrectly added. Order, at 14-15. The Order also inaccurately refers to Wife as "Ms. Martin." *Id.* at 14.

because she was living with an employed, adult child.[30] The Family Court made a factual finding that "[a]s of this Order, neither party has remarried."[31] But Husband testified that he remarried on May 20, 2018, prior to the hearing.[32] The record is unclear, but Husband implies that he is living with his new spouse.[33] If Husband is cohabitating with an employed adult, the Family Court gave no reason why the logic applied to Wife's expenses does not apply to Husband's expenses.[34] Because the Family Court's finding that Husband was not remarried is contradicted by the record, and the Family Court did not determine whether Husband is similarly cohabitating, the Family Court erred in determining Husband's estimated expenses.

(16) Wife contends that the Family Court left out Husband's pension from the property division. Husband testified that he has a pension with State Farm.[35] The Order does not reference Husband's pension, but the parties' Stipulation identifies it as a disputed issue.[36] Husband also acknowledges that the court apparently overlooked his pension.[37]

---

[30] *Id.* at 15.
[31] *Id.* at 2.
[32] App. to Opening Br. at A020.
[33] *Id.* (questioning about the spouse on direct examination immediately following questions about Husband's current address).
[34] *See* Order, at 19.
[35] App. to Opening Br. at A039.
[36] *Id.* at A105 (Wife proposes an equal split and Husband is silent on the issue).
[37] Answering Br. at 16.

(17) Wife argues that the Family Court erred in dividing several credit card debts as marital debts. 13 *Del. C.* § 1513 requires the Family Court to consider the parties' debts when determining property division.[38] During the hearing, the Family Court assessed each credit card debt and only included those close enough to the separation date for the Family Court to determine that the underlying expenses benefitted the marriage.[39] The Family Court also looked to the parties' Rule 16(c) Financial Report to determine the relevance of the underlying expenses.[40] Thus, the Family Court did not err because the record supports the finding that the credit card debts were marital debts.

(18) Finally, Wife argues that the Family Court erred in denying Wife's request for court costs and attorneys' fees. Under 13 *Del. C.* § 1515, the "Court from time to time after considering the financial resources of both parties may order a party to pay all or part of the cost to the other party of maintaining or defending any proceeding under this title and for attorneys' fees."[41] The Family Court did not address this issue even though it was raised at the hearing.[42]

---

[38] 13 *Del. C.* § 1513.
[39] App. to Opening Br. at A024-28.
[40] Order, at 10 (citing Resp't Ex. 2).
[41] 13 *Del. C.* § 1515.
[42] App. to Opening Br. at A088.

NOW, THEREFORE IT IS ORDERED that the judgment of the Family Court is REVERSED and REMANDED for further proceedings consistent with this Order. On remand, the Family Court should re-evaluate the property division considering Wife's disputed request to remain in the home and Husband's pension; reconsider alimony after reassessing Wife's income, Wife's estimated expenses, and Husband's estimated expenses; and decide Wife's request for court costs and attorneys' fees.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice